# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FITBIT, INC., ) | |
| ) | C.A. No. 15-cv-990-RGA |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALIPHCOM d/b/a JAWBONE and ) | **DEMAND FOR JURY TRIAL** |
| BODYMEDIA, INC., ) | |
| ) | |
| Defendants. ) | |

## <u>OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a</u>)

Dated: December 18, 2015

Kalpana Srinivasan (Admitted *Pro Hac Vice*)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
[Tel.] (310) 789-3100
[Fax] (310) 789-3150
ksrinivasan@susmangodfrey.com

Max L. Tribble, Jr. (Admitted *Pro Hac Vice*)
Joseph S. Grinstein (Admitted *Pro Hac Vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
[Tel.] (713) 651-9366
[Fax] (713) 654-6666
mtribble@susmangodfrey.com
jgrinstein@susmangodfrey.com

Brian E. Farnan (Bar No. 4089)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

Genevieve Vose Wallace (Admitted *Pro Hac Vice*)
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
[Tel.] (206) 516-3880
[Fax] (206) 516-3883
gwallace@susmangodfrey.com
esargeant@susmangodfrey.com
lcalkins@susmangodfrey.com

Elisha Barron (Admitted *Pro Hac Vice*)
**SUSMAN GODFREY L.L.P.**
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828
[Tel.] (212) 336-8330
[Fax] (212) 336-3800
ebarron@susmangodfrey.com
*Attorneys for Defendants*

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS ....................................................................................................2

III. LEGAL STANDARD............................................................................................................4

IV. ARGUMENT.........................................................................................................................6

    A. The Private Convenience Factors Overwhelmingly Favor Transfer. ......................7

        1. Plaintiff's Choice of Forum is Not Entitled to Significant Weight........................................................................................................7

        2. Defendants Have a Legitimate Preference for Litigating in California and the Fact That the Parties Are Headquartered in California Favors Transfer ........................................................................8

        3. The Claims Arose in the Northern District of California, Which Favors Transfer ................................................................................10

        4. The Majority of Party and Non-Party Witnesses are in Northern California. .....................................................................................10

        5. The Evidence is Located in Northern California. .....................................11

    B. The Public Interest Factors Strongly Favor Transfer to the Northern District of California .................................................................................................11

        1. The Existence of Pending Cases Between the Parties in the Northern District of California, In Which Venue is Not Challenged, Favors Transfer in the Interest of Efficiency, Cost and Administrative Ease. ..........................................................................11

        2. California's Local Interest in the Suits Favors Transfer............................13

V. CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

Cases

*Aliphcom et al. v. Fitbit, Inc.*,
    No. 3:15-cv-02579 (N.D. Cal. 2015) .................................................................................. 3

*Fitbit, Inc. v. AliphCom et al.*,
    No. 1:15-cv-00775 (D. Del. 2015) ..................................................................................... 4

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ....................................................................................... 11

*In re Hoffmann–La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ....................................................................................... 13

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) ................................................................................. passim

*In re Verizon Bus. Network Servs. Inc.*,
    635 F.3d 559 (Fed. Cir. 2011) ......................................................................................... 12

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) ....................................................................................... 12

*In the Matter of Certain Activity Tracking Devices, Systems and Components Thereof*,
    Inv. No. 337-TA-3096 ....................................................................................................... 3

*In the Matter of Certain Activity Tracking Devices, Systems and Components Thereof*,
    Inv. No. 337-TA-963 ......................................................................................................... 3

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ............................................................................................ 5, 7

*Mitel Networks Corp. v. Facebook, Inc.*,
    943 F. Supp. 2d 463 (D. Del. 2013) .................................................................................. 8

*OpenTV, Inc. v. Netflix, Inc.*,
    No. CV 12-1733 (GMS), 2014 WL 1292790 (D. Del. Mar. 31, 2014) ..................... passim

*Smart Audio Technologies, LLC v. Apple, Inc.*,
    910 F. Supp. 2d 718 (D. Del. 2012) .......................................................................... 10, 11

*Wacoh Co. v. Kionix Inc.*,
    845 F. Supp. 2d 597 (D. Del. 2012) ............................................................................ 8, 10

Statutes

28 U.S.C. § 1404(a) ................................................................................................................ 1, 4

# I.   INTRODUCTION

This case is the last-filed of five lawsuits pending between Fitbit, Inc. ("Fitbit" or "Plaintiff") and Aliphcom d/b/a Jawbone and Bodymedia, Inc. (collectively "Jawbone" or "Defendants") arising out the parties' competing lines of wearable fitness trackers.  It is the third case filed by Fitbit against Jawbone—the other two were filed in September 2015, one in this District and one in the Northern District of California.  Fitbit filed the instant case after Defendants had already moved to transfer Fitbit's first Delaware case, No. 15-cv-775 (also pending in this Court) to Northern California: where Fitbit and Jawbone are headquartered; where the majority of the technologies at issue were developed; and where three other cases between the parties—two filed by Jawbone, one in state and one in federal court, and one filed by Fitbit in federal court—are already pending.

Like Fitbit's other suit in this Court, the only connection between this case and Delaware is that Fitbit and defendant Bodymedia, Inc. ("Bodymedia"), which was acquired by Jawbone in 2013, are incorporated here.  In contrast, the connections to the Northern District of California are significant, both quantitatively and qualitatively.  Aliphcom is incorporated in California, Fitbit and Jawbone have their principal places of business in the Northern District of California, and the majority of Bodymedia employees working on the relevant technologies—all of which are Jawbone-branded—work in California.  The accused products were developed in Northern California, as were the technologies claimed in two of the three patents-in-issue.  The vast majority of relevant witnesses, both party and non-party, as well as the evidence, are likely located in the Northern District of Californa.  And finally, Fitbit itself filed a suit involving the same parties and technologies, and many of the same witnesses, in the Northern District of

1

California.  Fitbit has also agreed that Northern California is a convenient forum in the case Jawbone filed against Fitbit in that district.

In short, although it has conceded that the Northern District of California is a convenient forum for nearly identical litigation, Fitbit has chosen to file two additional cases in the District of Delaware. In light of the lack of connections between this case and Delaware, Fitbit's venue choice appears to be part of a strategy of making litigation costly and inconvenient for its opponents.  Splitting five cases involving the same parties between two states on opposite coasts is equally inefficient for the parties, the witnesses and the Courts.[1]  The only way to alleviate the inconvenience of having to litigate in these different forums is to transfer the Delaware cases to the Northern District of California, which would be the far more convenient district even if similar litigation were not already pending there between the same parties.  Accordingly, Jawbone respectfully requests that the Court transfer this lawsuit to the Northern District of California.

## II.   STATEMENT OF FACTS

Fitbit is a corporation organized under Delaware law with its headquarters in San Francisco, California.  *See* Compl. ¶ 1 (D.I. 1).  It has no office or other facility in Delaware.  *See* http://www.fitbit.com/about#location (visited November 30, 2015).  AliphCom d/b/a Jawbone is a California corporation with its headquarters in San Francisco, California.[2]  *See* Compl. ¶ 2.  In 2013, Aliphcom d/b/a Jawbone acquired Bodymedia, Inc., a Delaware corporation with its headquarters in Pittsburgh, Pennsylvania.  *Id*. ¶¶ 3-4.  The accused products are all Jawbone-

---

[1] The inefficiency is exacerbated by the fact that each party also has a case pending in the International Trade Commission, which is located in Washington, D.C.

[2] Aliph, Inc. is a Delaware-based subsidiary of AliphCom d/b/a Jawbone, which is based in California. Aliph, Inc. is not a party in this or any of the related lawsuits.

branded products, and Fitbit does not allege that any products designed by Bodymedia infringe the patents-in-issue. *See id.* ¶ 15.  Of Jawbone's approximately 250 domestic employees, approximately 225 work in the Northern District of California.  *See* Declaration of Michael Luna ("Luna Decl.") ¶¶ 5-8, attached as <u>Exhibit A</u>.  The Bodymedia employees who work on the accused products are almost all located in Northern California.  *See id.* ¶¶ 6, 8.  Jawbone has no office or other facility in Delaware.  *Id.* ¶ 10.

Jawbone and Fitbit design and sell competing wearable devices that track sleep and activity ("wearable fitness trackers").  *See* Compl. at ¶¶ 14-15.  Fitbit's line of wearable fitness trackers includes the Zip, One, Flex, Charge, Charge HR and Surge (the "Fitbit Devices").  *Id.* ¶ 14.  Jawbone's line of wearable fitness trackers includes the UP Move, UP24, UP2, UP3, and UP4, which are used in conjunction with the UP App software interface (collectively, the "UP Devices").  Luna Decl. ¶ 4.

At the time this case was filed, there were already four lawsuits pending between these parties.[3]  *See* Litigation Chart, attached as <u>Exhibit B</u>.  Three of the lawsuits are pending in Northern California, one filed in state court by Jawbone, and two in federal court—one filed on June 10, 2015 by Jawbone and one filed on September 8, 2015 by Fitbit.[4]  In the Northern District of California case filed by Jawbone, the parties agreed in that action that venue is proper in the Northern District of California.  *See* Joint Case Management Statement ("JCMS") at 1,

---

[3] In addition, there was an investigation pending in the ITC, based on a complaint filed by Jawbone on July 7, 2015, asserting patent infringement and trade secret misappropriation claims. *See In the Matter of Certain Activity Tracking Devices, Systems and Components Thereof*, Inv. No. 337-TA-963.  On November 2, 2015, Fitbit filed a parallel complaint to the instant case in the ITC.  *See In the Matter of Certain Activity Tracking Devices, Systems and Components Thereof*, Inv. No. 337-TA-3096.

[4] *See* Compl., *AliphCom v. Fitbit, Inc., et al.*, CGC 15-546004 (Super. Ct. S.F. County); Compl., *AliphCom et al. v. Fitbit, Inc.*, No. 3:15-cv-02579 (N.D. Cal. 2015) (HSG) (D.I. 1); Compl., *Fitbit, Inc. v. AliphCom et al.*, No. 5:15-cv-04073 (N.D. Cal. 2015) (PSG) (D.I. 1).

*Aliphcom et al. v. Fitbit, Inc.*, No. 3:15-cv-02579 (N.D. Cal. 2015) (D.I. 42), attached as Exhibit C. In addition, Fitbit filed another case on September 5, 2015 in the District of Delaware, which Jawbone moved to transfer to the Northern District of California on October 26, 2015—before Fitbit filed the instant case. *See Fitbit, Inc. v. AliphCom et al.*, No. 15-cv-775 (D. Del. 2015) (D.I. 1, 11).

On October 29, 2015, Fitbit filed the instant case alleging infringement of U.S. Patent Nos. 8,920,332 (the "'332 patent"), 8,868,377 (the "'377 patent"), and 9,089,760 (the "'760 patent") based on Jawbone's manufacture, use, offer for sale, sale, and/or importation of the UP Devices. *See* Compl. at ¶¶ 17-24, 25-32 and 33-40. The UP Devices are sold in all fifty states, including Delaware, but no design or manufacture occurred in this District. Luna Decl. ¶ 12. Rather, the UP Devices were principally designed in Northern California. *Id.* ¶ 11. The inventors of the '332 Patent and the '377 Patent are located in the Northern District of California, as are the patent firms that prosecuted those those patents. *See* Compl., Ex. A at 13, 94. The inventors of the '760 Patent are located in New Jersey and the associated patent firm is located in the Northern District of California. *See id.* at 163. The only connection that Delaware has to the pending case is the fact that Fitbit and BodyMedia (which is now wholly-owned by a California corporation, AliphCom) are incorporated here. No initial conference has been scheduled and no discovery has been conducted in this matter.

### III. LEGAL STANDARD

28 U.S.C. § 1404(a) grants judges broad discretion to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district . . . where it might have been brought." It is indisputable that this case could have been brought in the Northern District of California: Jawbone and Fitbit have their principal places of business in

Northern California; Fitbit has filed an analogous case against Jawbone in that district, which has several overlapping witnesses; and the parties have agreed that venue is proper in the Northern District of California in a third case involving wearable fitness trackers, *see* JCMS at 1. In all, there are three lawsuits between the parties already pending in California, and one pending motion to transfer a fourth case there.

The Third Circuit framework for adjudicating a motion to transfer venue requires courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995); *see also In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (analyzing and applying *Jumara* standard). Among the private interests to be considered are: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records. *Jumara*, 55 F. 3d at 879.

The public interests include: (1) practical considerations that could make the trial easy, expeditious, or inexpensive; (2) the relative administrative difficulty in the two fora resulting from court congestion; and (3) the local interest in deciding local controversies. *Id.* at 879–80. The pendency of related litigation in a particular court is also a relevant consideration in considering whether transfer would be expedient. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224 (considering "a district court's concurrent litigation involving the same patent to be a relevant consideration, if the court's experience was not tenuous and the cases were co-pending").

5

## IV.   ARGUMENT

In September 2015 Fitbit filed two lawsuits against Jawbone—one in this Court and one in the Northern District of California—alleging infringement of certain of its patents based on Jawbone's manufacture and sale of the UP Devices. After Jawbone moved to transfer the Delaware case to the Northern District of California, where three cases involving these parties were already pending, Fitbit doubled down on its strategy of multiplying litigation in different venues by filing the instant case in the District of Delaware. All three of Fitbit's cases involve the same accused products—the UP Devices—and allege infringement of patents that have overlapping inventors and patent prosecution firms. Yet Fitbit suggests that while Northern California is a convenient suit for <u>one</u> of these lawsuits, it is not a convenient suit for the other two. Fitbit apparently contends, moreover, that even though the District of Delware is inconvenient for Jawbone, and no other factors favor Delaware as a venue, the fact that two parties are incorporated in Delaware, alone, entitles Fitbit to maintain two lawsuits here and one in California.

As described below, the majority of factors favor transfer to the Northern District to California:

- The operative events occurred largely in the Northern District of California (and none in Delaware);
- The likely witnesses, both party and third-party, are mostly located in California (and none in Delaware);
- The relevant evidence is in California;

- Fitbit has conceded that the Northern District of California is a convenient forum in another patent infringement action between these parties involving several overlapping witnesses;

- Jawbone's forum preference is for the Northern District of California;

- Three lawsuits between these parties are pending in Northern California and a motion to transfer another suit to the Northern District of California is also pending; and

- California has a greater local interest than Delaware in adjudicating the case.

In contrast, the only connection this case has to Delaware is the corporate citizenship of Fitbit and Bodymedia, which has been acquired by Jawbone. In view of the numerous factors favoring transfer to the Northern District of California, the lack of meaningful connection to Delaware, and the inefficiency of maintaining four suits between the same parties in federal courts on opposite coasts, transfer of this case and the other Delaware case to the Northern District of California is appropriate.

### A. The Private Convenience Factors Overwhelmingly Favor Transfer.

The *Jumara* private interest "convenience" factors include: (1) the plaintiff's forum preference; (2) defendant's forum preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the evidence. 55 F.3d at 879. With the exception of the plaintiff's forum preference all of the private factors favor transfer.

#### 1. Plaintiff's Choice of Forum is Not Entitled to Significant Weight

Although Fitbit is incorporated in Delaware—its only known connection to this forum—the Federal Circuit has made clear that "a party's state of incorporation . . . is certainly not a

7

dispositive fact in the venue transfer analysis." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). And while a plaintiff's choice to litigate in its place of incorporation, "must be accorded some deference . . . the fact that Delaware is not [the] principal place of business reduces somewhat the weight this factor is accorded." *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 469 (D. Del. 2013). *Accord Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 601 (D. Del. 2012) (plaintiff's choice of forum weighs less strongly where plaintiff does not have "its principal place of business (or, indeed, any place of business)" there). Indeed, a court in this District held that even where <u>all</u> parties were incorporated in plaintiff's chosen forum, but had their principal places of business in the proposed transferee forum, transfer was warranted where, as here, the other factors favored transfer. *See OpenTV, Inc. v. Netflix, Inc.*, No. CV 12-1733 (GMS), 2014 WL 1292790, at *2 (D. Del. Mar. 31, 2014).

The deference due Fitbit's choice of forum is further diminished by the fact that Fitbit elected to file an earlier suit against against Jawbone, arising out of the same accused products, and likely involving numerous overlapping witnesses, in the Northern District of California. In addition, Fitbit conceded in <u>another</u> suit pending between the parties (this one filed by Jawbone) that the Northern District of California is the convenient venue in which to litigate analogous claims. *See* JCMS at 1. In the circumstances presented, Fitbit's choice of this forum over the Northern District of California, which it has conceded is also convenient, should not outweigh the numerous other factors that favor transfer.

**2. Defendants Have a Legitimate Preference for Litigating in California and the Fact That the Parties Are Headquartered in California Favors Transfer**

Both Defendants' forum preference and the convenience of the parties favor transfer to the Northern District of California. Aliphcom, the manufacturer of the allegedly infringing products, is incorporated in California, and has its principal place of business in the Northern

District of California.  Although Bodymedia is incorporated in Delaware, the Federal Circuit has noted that a party's place of incorporation is not listed as a factor for the venue inquiry and is "certainly not . . . dispositive." *In re Link_A_Media Devices Corp.*, 662 F.3d at 1224.  This is particularly so where none of the accused products are Bodymedia products.  And while Bodymedia has its principal place of business in Pittsburgh, Pennsylvania, since it was acquired by Jawbone in 2013, the vast majority of its employees have relocated to Jawbone's headquarters in San Francisco, California.  Approximately 225 Jawbone employees are located in the Northern District of California, while only approximately 6 employees remain in Pittsburgh.  *See* Luna Decl. ¶¶ 6, 8.  No Jawbone employees are located in Delaware. *See id*. ¶ 10.

Fitbit also has its principal place of business in the Northern District of California and the majority of its almost 600 employees work in Northern California, some of whom are likely relevant witnesses in this lawsuit.  *See* Fitbit, Inc., S-1 Registration Statement at 1, 24 (May 7, 2015), http://www.sec.gov/Archives/edgar/data/1447599/000119312515176980/d875679ds1.htm (visited November 30, 2015).  Fitbit has no employees or operations in Delaware.  *See* http://www.fitbit.com/about#location (visited November 30, 2015).

A court in this District addressing an analogous situation held that the fact that both parties are headquartered in Northern California "weighs strongly in favor of transfer to Northern California" where transferring venue "would undoubtedly reduce litigation costs and be more convenient for the parties to litigate where they are physically located." *OpenTV*, 2014 WL 1292790, at *2.  This is so even where the parties are incorporated in Delaware and "financially able" to litigate there.  *Id.*

9

### 3. The Claims Arose in the Northern District of California, Which Favors Transfer

The allegedly infringing products, the UP Devices, were all designed and manufactured in the Northern District of California. Where, as here, the accused products are sold in both states, the location of the development takes on particular importance. *See OpenTV*, 2014 WL 1292790, at *2 (where patent infringement "can be viewed as occurring in all districts, infringement claims have even deeper roots in the forum where the accused products were developed") (internal quotations omitted). *Accord Wacoh,* 845 F. Supp. 2d at 602 ("To some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured."); *Smart Audio Technologies, LLC v. Apple, Inc.,* 910 F. Supp. 2d 718, 730 (D. Del. 2012) (where defendant "has allegedly committed acts of infringement in both the District of Delaware and the Northern District of California [but] the development of the accused product took place only in the latter . . . this factor weighs slightly in favor of transfer."). In addition the majority of non-party inventors of Bodymedia patents, to the extent that they may prove relevant, are now located in Northern California. *See* Luna Decl. ¶ 13. Accordingly, this factor weighs strongly in favor of transfer.

### 4. The Majority of Party and Non-Party Witnesses are in Northern California.

As indicated on the face of the patents-in-suit, four of the six inventors of Fitbit's patents in issue are located in Northern California. *See* Compl., Ex. A at 13, 94. Of these four inventors, Jung Ook Hong, an inventor of the '332 Patent, is a third-party witness. *See* https://www.linkedin.com/in/jungohong (visited December 1, 2015). The other two inventors of the '760 patent are third parties located in New Jersey, who may or may not be within the Rule 45 subpoena range of this Court. The patent agents that prosecuted the patents-in-suit on Fitbit's behalf are located in Northern California. *See* Compl., Ex. A at 13, 94, 172. Likewise, the inventors of the accused products, both party and non-party, are located in Northern California.

10

*See* Luna Decl. ¶¶ 13, 15. None of the inventors of the patents-in-suit or patent agents or witnesses with knowledge of the accused products are located in Delaware. *See generally*, *id.* Accordingly, this factor weighs in favor of transfer. *See OpenTV*, 2014 WL 1292790, at *3 (citing cases).

5. **The Evidence is Located in Northern California.**

Finally, the vast majority of the evidence is located in Northern California, where both Fitbit and Jawbone have their headquarters and the design of the accused products at issue occurred. While this factor is of limited relevance where the burden of transporting evidence is minimal, courts have recognized that, even under those circumstances, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *OpenTV*, 2014 WL 1292790, at *3 (quoting *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Accordingly, this factor, too, weighs in favor of transfer.

B. **The Public Interest Factors Strongly Favor Transfer to the Northern District of California**

In light of the Northern District of California's superior connection to the parties, the likely witnesses, and the operative facts in this case, as well as the existence of two cases pending in that district between the parties (in which venue is not challenged), the public interests of (1) efficiency and cost, (2) administrative ease, and (3) local interest in deciding local controversies, weigh strongly in favor the Northern District of California over Delaware.

1. **The Existence of Pending Cases Between the Parties in the Northern District of California, In Which Venue is Not Challenged, Favors Transfer in the Interest of Efficiency, Cost and Administrative Ease.**

The Northern District of California is "equally equipped" vis-à-vis Delaware to address the federal patent laws at issue in Fitbit's cases against Jawbone. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224. More important though, in terms of efficiency, is the fact that

11

there are two cases already pending between the parties in the Northern District of California that involve the same line of products (the UP Devices and the Fitbit Devices), and, as a result, likely have overlapping witnesses and evidence.  Indeed, two of the inventors of the '377 patent are also inventors of the three of the patents-in-issue in Fitbit's pending case in Northern California. Delaware courts consider "a district court's concurrent litigation involving the same patent to be a relevant consideration, if the court's experience was not tenuous and the cases were co-pending."  *Id.* (citing *In re Verizon Bus. Network Servs. Inc.,* 635 F.3d 559, 562 (Fed. Cir. 2011); *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346–47 (Fed. Cir. 2010)).

Like Fitbit's earlier-filed case in this Court, No. 15-cv-775, the present case is sufficiently intertwined with Fitbit's action for patent infringement against Jawbone in the Northern District of California that the actions would likely be considered "related" within the meaning of the Northern District of California's Civil Local Rule 3-12. Local Rule 3-12(a) defines cases as "related" if: "(1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."[5]  Here, both cases involve the same parties, Fitbit and Jawbone, and in each, Fitbit contends that Jawbone infringes Fitbit patents through the sale of *the same* UP Devices.  There are at least two likely overlapping Fitbit witnesses—inventors of the '377 Patent and all three patents in issue in the Northern District of California—not to mention the California-based developers of the UP Devices.

Consolidating the Fitbit infringement actions, which are in roughly the same place procedurally, in a single court in Northern California would best serve the public interests of

---

[5] Local Rule 3-12(b) *mandates* that a party to an action that has been removed to the Northern District of California and that is, or may be, related to another pending action "must promptly file . . . an Administrative Motion to Consider Whether Cases Should be Related[.]"

12

efficiency and low cost, while adding little to the administrative burden of the Northern District of California.  Even maintaining the suits in separate courts in the same district would be far more efficient than maintaining four federal lawsuits against the same parties on two opposite coasts.  Because venue is not challenged in either of the lawsuits pending in Northern California, which is itself notable, the only solution to this inefficiency is transferring the cases from this District to the Northern District of California. Accordingly, the public interest factors of efficiency, cost, and administrative burden strongly favor transfer.

### 2. California's Local Interest in the Suits Favors Transfer.

Although Jawbone and Fitbit sell their wearable fitness trackers nationwide, the Northern District of California has significant connections to the dispute insofar as the accused Jawbone products were designed and developed in Northern California, and both parties' principal place of business is in Northern California. Under such circumstances, the local interest factor favors transfer.  *See In re Hoffmann–La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("Where there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.").  Moreover, where "the only connection this action has with Delaware is the fact that [some] parties are incorporated here . . . Delaware's resulting [local] interest is less compelling."  *OpenTV*, 2014 WL 1292790, at *4.

### V.   CONCLUSION

In light of the foregoing, Jawbone respectfully requests that, in the interest of efficiency and convenience, this Court grant the motion to transfer venue to the Northern District of California.

| | |
|---|---|
| Dated: December 18, 2015 | Respectfully submitted, |

                **FARNAN LLP**

                /s/ Brian E. Farnan
                Brian E. Farnan (Bar No. 4089)
                919 North Market Street, 12th Floor
                Wilmington, DE 19801
                (302) 777-0300
                bfarnan@farnanlaw.com

                **SUSMAN GODFREY L.L.P.**
                Kalpana Srinivasan (Admitted *Pro Hac Vice*)
                1901 Avenue of the Stars, Suite 950
                Los Angeles, California  90067-6029
                [Tel.] (310) 789-3100
                [Fax] (310) 789-3150
                ksrinivasan@susmangodfrey.com

                Max L. Tribble, Jr. (Admitted *Pro Hac Vice*)
                Joseph S. Grinstein (Admitted *Pro Hac Vice*)
                1000 Louisiana, Suite 5100
                Houston, Texas  77002-5096
                [Tel.] (713) 651-9366
                [Fax] (713) 654-6666
                mtribble@susmangodfrey.com
                jgrinstein@susmangodfrey.com

                Genevieve Vose Wallace (Admitted *Pro Hac Vice*)
                1201 Third Avenue, Suite 3800
                Seattle, Washington 98101-3000
                [Tel.] (206) 516-3880
                [Fax] (206) 516-3883
                gwallace@susmangodfrey.com
                esargeant@susmangodfrey.com
                lcalkins@susmangodfrey.com

                Elisha Barron (Admitted *Pro Hac Vice*)
                560 Lexington Avenue, 15th Floor
                New York, New York 10022-6828
                [Tel.] (212) 336-8330
                [Fax] (212) 336-3800
                ebarron@susmangodfrey.com

                *Attorneys for Defendants*