# EXHIBIT A

# GIBSON DUNN



Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Josh Krevitt
Direct +1 212.351.2490
Fax +1 212.351.5390
JKrevitt@gibsondunn.com

November 2, 2015

VIA COURIER

The Honorable Lisa R. Barton
Secretary
United States International Trade Commission
500 E. Street, S.W.
Washington, D.C. 20436

Re: *In the Matter of Certain Wearable Activity Tracking Devices, Systems, and Components Thereof; Inv. No. 337-TA-_____*

Dear Secretary Barton:

Enclosed for filing on behalf of Complainant Fitbit, Inc. against proposed Respondents AliphCom d/b/a Jawbone and BodyMedia, Inc. (collectively, "Proposed Respondents") are documents in support of Complainant's request that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended. Pursuant to the Commission Rules of Practice and Procedure, request for confidential treatment of Fitbit's Complaint and Confidential Exhibits 38C-40C is transmitted concurrently with this submission.

Accordingly, Complainant Fitbit submits the following documents for filing:

1. An original and eight (8) copies of the verified Non-Confidential Complaint and the Public Interest Statement, one (1) CD of the accompanying Non-Confidential exhibits. (19 CFR §§ 201.6(c), 210.4(f)(2), 210.8(a)(1)(i), and 210.8(b).)

2. An original and eight (8) copies of the verified Confidential Complaint and the Public Interest Statement, one (1) CD of the accompanying Confidential Exhibits 38C-40C. (19 CFR §§ 201.6(c), 210.4(f)(2), 210.8(a)(1)(i), and 210.8(b).)

3. Two (2) additional copies of both the verified Non-Confidential Complaint and the Public Interest Statement and two (2) CDs of the Non-Confidential exhibits, one (1) each for service upon each of the Proposed Respondents. (19 CFR §§ 210.8(a)(1)(iii).)

4. Two (2) additional copies of the verified Confidential Complaint and the Public Interest Statement and two (2) CDs of the Confidential Exhibits 38C-40C, one (1)

NO. 1065   P. 1                    U.S. International Trade Commiss                    98PM

GIBSON DUNN

The Honorable Lisa R. Barton
November 2, 2015
Page 2

each for service upon each of the Proposed Respondents.    (19 CFR
§§ 210.8(a)(1)(iii).)

5. The original certified copies of U.S. Patent No. 8,920,332 ("the '332 patent"), U.S.
Patent No. 8,868,377 ("the '377 patent"), and U.S. Patent No. 9,089,760 ("the '760
patent") (collectively, "the Patents at Issue" or "Fitbit's Patents"); and three (3)
additional copies of the patents on CD, cited in the Complaint as Exhibits 1-3 (19
CFR §§ 210.8(a)(1)(iii) and 210.12(a)(9)(i).)

6. The original certified copies of the assignments for the Patents at Issue and three (3)
additional copies of the assignments for the Patents at Issue on CD, cited in the
Complaint as Exhibits 4-6. (19 CFR §§ 210.8(a)(1)(iii) and 210.12(a)(9)(ii).)

7. The original certified copies of the prosecution histories of the Patents at Issue
included in the Complaint as Appendices A, C, and E, and three (3) additional copies
of each on separate CDs. (19 CFR § 210.12(c)(1).)

8. Four (4) copies on separate CDs of patent and technical reference documents
identified in each of the prosecution histories of the Patents at Issue, included in the
Complaint as Appendices B, D, and F. (19 CFR § 210.12(c)(2).)

Thank you for your attention to this matter. Please contact me if you have any questions.

Sincerely,

*Josh Krevitt*

Josh Krevitt

JK/jcf

Enclosures:

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Josh Krevitt
Direct: +1 212.351.2490
Fax: +1 212.351.6390
JKrevitt@gibsondunn.com

November 2, 2015

<u>VIA COURIER</u>

The Honorable Lisa R. Barton
Secretary
United States International Trade Commission
500 E. Street, S.W.
Washington, D.C. 20436

Re: *In the Matter of Certain Wearable Activity Tracking Devices, Systems, and Components Thereof; Inv. No. 337-TA-_____*

Dear Secretary Barton:

In accordance with Commission Rules 210.6 and 210.5, 19 CFR §§ 201.01 and 210.5, Complainant Fitbit requests confidential treatment of the business information contained in its Complaint and Confidential Exhibits 38C-40C. A certification is provided below pursuant to 19 C.F.R. §§ 201.06 and 210.5 requesting confidential treatment of Fitbit's Complaints and Confidential Exhibits 38C-40C.

The information for which confidential treatment is sought is proprietary commercial information not otherwise publicly available. Specifically, the Complaint and Confidential Exhibits 38C-40C (which contain sworn declarations of Fitbit's CFO and CTO and a list of licensed entities for the Patents-at-Issue) contain proprietary and confidential business and technical information of Complainant Fitbit and Fitbit's investments in the domestic industry.

The information described above qualifies as confidential business information pursuant to Commission Rule 210.6 because:

a) It is not available to the public;

b) Unauthorized disclosure of such information could cause substantial harm to the competitive position of Fitbit; and

c) Its disclosure could impair the Commissions' ability to obtain information necessary to perform its statutory function.

Beijing - Brussels - Century City - Dallas - Denver - Dubai - Hong Kong - London - Los Angeles - Munich
New York - Orange County - Palo Alto - Paris - San Francisco - São Paulo - Singapore - Washington, D.C.

GIBSON DUNN

The Honorable Lisa R. Barton
November 2, 2015
Page 2

Thank you for your attention to this matter. Please contact me if you have any questions.

Sincerely,

*Josh Krevitt*

Josh Krevitt

JK/jcf

:42PM    U.S. International Trade Commiss

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

In the Matter of

CERTAIN WEARABLE ACTIVITY
TRACKING DEVICES, SYSTEMS, AND
COMPONENTS THEREOF

Investigation No. _____

## COMPLAINANT FITBIT, INC.'S STATEMENT ON THE PUBLIC INTEREST

In support of its Complaint, filed on October 30, 2015 and titled "In the Matter of Certain Wearable Activity Tracking Devices, Systems, and Components Thereof," Complainant Fitbit, Inc. ("Fitbit") respectfully submits this Statement of Public Interest, as required by 19 C.F.R. § 210.8(b) for the commencement of an investigation directed to proposed Respondents AliphCom d/b/a Jawbone and BodyMedia, Inc. (collectively, "Jawbone").

The present statement addresses the four public interest factors that must be considered before issuing an exclusion order pursuant to 19 U.S.C. § 1337(d)(1): (1) public health and welfare in the United States, (2) competitive conditions in the United States economy, (3) the production of like or directly competitive articles in the United States, and (4) United States consumers. As discussed below, none of the four statutorily-enumerated public interest factors counsels against the issuance of an exclusion order directed to proposed Respondents' infringing wearable fitness and activity trackers identified in the Complaint (the "Accused Products").

Indeed, The Commission has found that an exclusion order would violate the public interest only in a limited number of cases in which "inadequate supply [of the articles at issue] within the United States—by both the patentee and the domestic licensees—meant that an exclusion order would deprive the public of products necessary for some important health or welfare need: energy efficient automobiles, basic scientific research, or hospital equipment." *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1360 (Fed. Cir. 2010). *See, e.g., Fluidized Supporting Apparatus*, 337-TA-182/188, 1984 WL 63741 (Oct. 1984) (no therapeutically

comparable product available to hospital bed for burn patients); *Inclined-Field Acceleration Tubes*, 337-TA-67, 0080 WL 594319 (Dec. 1980) (no high-quality domestic alternatives to imported tubes used in nuclear research); *Automatic Crankpin Grinders*, 337-TA-60, 0079 WL 419349 (Dec. 1979) (no timely supply of parts for automakers to meet congressionally mandated fuel-efficiency standards).

This investigation does not raise public interest concerns of the type and severity at issue in the aforementioned cases. The ways in which the Accused Products are used as well as the anticipated effects of an exclusion order on each public interest factor are set forth separately below.

### 1. The Requested Remedies Relate To Wearable Fitness and Activity Trackers

The Accused Products are wearable fitness and activity trackers, which are electronic devices used to monitor various indicia of health and fitness. For example—and depending on the version or model of the device used—individuals may wear such devices on their person in order to track the number of steps they have taken in a given period of time, the amount of calories they have burnt, the duration and quality of their sleep, or their heart rate.

On information and belief, Jawbone designs the Accused Products, which are then assembled in China.

The Accused Products compete directly with Fitbit's own product line of wearable fitness and activity trackers. Fitbit requests a limited exclusion order and a cease-and-desist order.

### 2. The Requested Remedies Do Not Raise Any Significant Public Health, Safety, or Welfare Concerns

The requested remedies would have no impact on public health and welfare within the meaning of 19 C.F.R. § 1337(d), (e), and (f) and 19 C.F.R. § 210.8(b). As an initial matter, the Accused Products provide simply a valuable aid to individual users who wish to monitor their health and fitness—they are not an irreplaceable tool for the improvement of individual fitness, nor would their absence be detrimental to individual or public health. Further, even if fitness and activity trackers were indispensable to public health and welfare *in general*, there are numerous

2

alternatives to Jawbone's *specific* Accused Products that could fill any void created by an exclusion order. Indeed, there are numerous substitutes for the Accused Products available on the market, most of which provide similar if not identical benefits. Thus, an exclusion order would not adversely impact public health and welfare.

### 3.    The Requested Remedies Would Not Adversely Affect Competitive Conditions in the United States Economy

The requested remedies would not affect competitive conditions in the United States economy, as the market for wearable fitness and activity trackers is highly competitive. Indeed, an exclusion order would likely have minimal—if any—effects on the supply and availability of like products, because several substitutes are available to replace Jawbone's devices on the market. For example, Fitbit, whose own product line includes at least six different like devices[1] that are directly competitive to Jawbone's Accused Products, would stand ready to meet any additional consumer demand for its devices in the event of an exclusion order. Further, a host of companies that compete directly with Jawbone (*e.g.*, Nike, Adidas, Garmin, Samsung, LG, Sony, Microsoft, Apple, TomTom, Basis, Jaybird, Polar, Withings, Misfit, Striiv, Razer, LifeTrak, Moov, Runstatic, Mio, Basis, Philips) offer acceptable substitutes for the Accused Products and also should have the capacity to fill any void in supply created by an exclusion order.

For the same reasons, an exclusion order would likely have minimal—if any—effects on the price of like products. The relevant market is highly competitive, as shown by the large number of competitors offering substitutes for Jawbone's devices, and—given a robust supply—it is unlikely that an exclusion order would cause a surge in the prices of similar products.

Lastly, an exclusion order would not hamper innovation in the industry at large. There is substantial consumer demand for such products, which ensures adequate economic incentives to counteract any deterrent effects an exclusion order might have on either potential market entrants or active market participants.

---

[1]  The Fitbit Zip, Fitbit One, Fitbit Flex, Fitbit Charge, Fitbit Charge HR, and the Fitbit Surge.

3

**4.    The Requested Remedies Would Not Adversely Affect the Production of Like or Directly Competitive Articles in the United States**

The requested remedies will not adversely affect the production of like or directly competitive articles in the United States. The accused Jawbone articles are manufactured in China, and Fitbit is not aware of any manufacturing operations in the United States that would be impacted by the issuance of a limited exclusion order. Further, to the best of Fitbit's knowledge, the accused Jawbone articles do not contain any components manufactured in the United States. Therefore, an exclusion order would not have a negative impact on any manufacturing operations in the United States.

**5.    The Requested Remedies Would Not Adversely Impact Consumers**

Neither an exclusion order nor a cease and desist order would have an adverse impact on consumers. Given the number of directly competitive products available to replace the Accused Products, an exclusion order would have—at most—marginal impact on the availability and price of such devices. Further, Fitbit submits that the devices at issue are sufficiently similar to their substitutes—in terms of functionality, overall quality, and performance—that substitution of like devices for Jawbone's devices would not affect consumers on the whole.

4

Dated: October 28, 2015

Respectfully submitted,

Josh Krevitt
Beatrice Hahn
George Stamatopoulos
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Wayne Barsky
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Tel: (310) 552-8500
Fax: (310) 551-8741

Jason Lo
Jennifer Rho
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave
Los Angeles, CA 90071-3197
Tel: (213) 229-7153
Fax: (213) 229-6153

Neema Jalali
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8258
Fax: (415) 374-8409

Frederick S. Chung
Stuart M. Rosenberg
Alison Watkins
Quincy Lu
Christina Chandler Kogan
Zachary Wood
Ryan Iwahashi
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304

5

Telephone: (650) 849-5300
Facsimile: (650) 849-5333

Andrew Lin
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel: (214) 698-3100
Fax: (214) 571-2900

*Counsel for Complainant Fitbit, Inc.*

6

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

In the Matter of

CERTAIN WEARABLE ACTIVITY TRACKING
DEVICES, SYSTEMS, AND COMPONENTS
THEREOF

Investigation No. _____

## VERIFIED COMPLAINT OF FITBIT, INC. UNDER
## SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

Complainant:

Fitbit, Inc.
405 Howard Street
San Francisco, CA 94105
Telephone: (877) 623-4997

Proposed Respondents:

AliphCom d/b/a Jawbone
99 Rhode Island Street
3rd Floor
San Francisco, CA 94103
Telephone: (714) 812-8200

BodyMedia, Inc.
Union Trust Building
501 Grant Street, Suite 1075
Pittsburgh, PA 15219
Telephone: (412) 288-9901

Counsel for Complainant
Josh Krevitt
Beatrice Hahn
George Stamatopoulos
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Wayne Barsky
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026

Tel: (310) 552-8500
Fax: (310) 551-8741

Jason Lo
Jennifer Rho
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave
Los Angeles, CA 90071-3197
Tel: (213) 229-7153
Fax: (213) 229-6153

Neema Jalali
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8258
Fax: (415) 374-8409

Frederick S. Chung
Stuart M. Rosenberg
Alison Watkins
Quincy Lu
Christina Chandler Kogan
Zachary Wood
Ryan Iwahashi
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

Andrew Lin
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel: (214) 698-3100
Fax: (214) 571-2900

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1. | Certified Copy of United States Patent Number 8,920,332 (the "'332 Patent") |
| 2. | Certified Copy of United States Patent Number 8,868,377 (the "'377 Patent") |
| 3. | Certified Copy of United States Patent Number 9,089,760 (the "'760 Patent") |
| 4. | Certified Copy of Assignment Papers for the '332 Patent |
| 5. | Certified Copy of Assignment Papers for the '377 Patent |
| 6. | Certified Copy of Assignment Papers for the '760 Patent |
| 7. | Infringement Claim Chart Comparing the '332 Patent with the Jawbone UP3 |
| 8. | Infringement Claim Chart Comparing the '332 Patent with the Jawbone UP4 |
| 9. | Infringement Claim Chart Comparing the '377 Patent with the Jawbone UP Move |
| 10. | Infringement Claim Chart Comparing the '377 Patent with the Jawbone UP2 |
| 11. | Infringement Claim Chart Comparing the '377 Patent with the Jawbone UP3 |
| 12. | Infringement Claim Chart Comparing the '377 Patent with the Jawbone UP4 |
| 13. | Infringement Claim Chart Comparing the '760 Patent with the Jawbone UP Move |
| 14. | Domestic Industry Claim Chart Comparing the '332 Patent With the Fitbit Surge |
| 15. | Domestic Industry Claim Chart Comparing the '332 Patent With the Fitbit Charge HR |
| 16. | Domestic Industry Claim Chart Comparing the '377 Patent With the Fitbit Surge |
| 17. | Domestic Industry Claim Chart Comparing the '377 Patent With the Fitbit Charge HR |
| 18. | Domestic Industry Claim Chart Comparing the '377 Patent With the Fitbit Charge |
| 19. | Domestic Industry Claim Chart Comparing the '377 Patent With the Fitbit Flex |
| 20. | Domestic Industry Claim Chart Comparing the '377 Patent With the Fitbit One |
| 21. | Domestic Industry Claim Chart Comparing the '377 Patent With the Fitbit Zip |
| 22. | Domestic Industry Claim Chart Comparing the '760 Patent With the Fitbit Flex |
| 23. | Domestic Industry Claim Chart Comparing the '760 Patent With the Fitbit One |
| 24. | Domestic Industry Claim Chart Comparing the '760 Patent With the Fitbit Zip |
| 25. | List of Foreign Counterparts to the Patents-at-Issue |
| 26. | Copies of Receipts from Purchase of Representative Accused Products |
| 27. | Copies of Photographs of Jawbone Products |
|  | (a) UP move |

i

| Exhibit No. | Description |
|---|---|
| | (b) UP2 |
| | (c) UP3 |
| | (d) UP4 |
| 28. | Sales Web Pages from Jawbone.com |
| 29. | Copies of Support and Information Web Pages for the UP Move |
| 30. | Copies of Support and Information Web Pages for the UP2 |
| 31. | Copies of Support and Information Web Pages for the UP3 |
| 32. | Copies of Support and Information Web Pages for the UP4 |
| 33. | Videos from Jawbone.com Support Pages |
| 34. | Fitbit Registration Statement – Amendment No. 4 to Form S-1 |
| 35. | Fitbit Quarterly Report – Form 10-Q |
| 36. | Jawbone Company Information |
| 37. | BodyMedia Company Information and Acquisition Press Release |
| 38C. | Declaration of William Zerella (Confidential) |
| 39C. | Declaration of Eric N. Friedman (Confidential) |
| 40C. | List of Licensed Entities for the Patents-at-Issue (Confidential) |

TABLE OF PHYSICAL EXHIBITS

| Physical Exhibit No. | Description |
|---|---|
| 1. | Jawbone UP Move |
| 2. | Jawbone UP2 |
| 3. | Jawbone UP3 |
| 4. | Jawbone UP4 |
| 5. | Fitbit Surge |
| 6. | Fitbit Charge HR |
| 7. | Fitbit Charge |
| 8. | Fitbit Flex |
| 9. | Fitbit One |
| 10. | Fitbit Zip |

## APPENDIX OF ADDITIONAL MATERIALS

- Appendix A:  Certified File History of U.S. Patent No. 8,920,332

- Appendix B:  Technical References Cited During Prosecution of U.S. Patent No. 8,920,332

- Appendix C:  Certified File History of U.S. Patent No. 8,868,377

- Appendix D:  Technical References Cited During Prosecution of U.S. Patent No. 8,868,377

- Appendix E:  Certified File History of U.S. Patent No. 9,089,760

- Appendix F:  Technical References Cited During Prosecution of U.S. Patent No. 9,089,760

# TABLE OF CONTENTS

VERIFIED COMPLAINT OF FITBIT, INC. UNDER SECTION 337 OF THE TARIFF ACT ... i

TABLE OF EXHIBITS ............................................................................................. i

TABLE OF PHYSICAL EXHIBITS ....................................................................... iii

APPENDIX OF ADDITIONAL MATERIALS ......................................................... iv

TABLE OF CONTENTS ......................................................................................... v

I.      INTRODUCTION ......................................................................................... 1

II.     COMPLAINANT ......................................................................................... 3

III.    PROPOSED RESPONDENTS ..................................................................... 4

        A.      AliphCom, Inc. d/b/a Jawbone ..................................................... 4

        B.      BodyMedia, Inc. ........................................................................... 5

IV.     THE PRODUCTS-AT-ISSUE ...................................................................... 5

V.      THE PATENTS-AT-ISSUE .......................................................................... 6

        A.      The '332 Patent ............................................................................. 6

        B.      The '377 Patent ............................................................................. 8

        C.      The '760 Patent ............................................................................. 9

        D.      Licenses ....................................................................................... 10

VI.     UNLAWFUL AND UNFAIR ACTS OF THE PROPOSED RESPONDENTS .............. 10

        E.      Patent Claims at Issue ................................................................ 13

VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE ............................ 13

VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS ........................................ 14

IX.    DOMESTIC INDUSTRY ................................................................................................ 14

       A.    Fitbit's Articles Protected by the Patents-at-Issue ........................................ 14

       B.    Fitbit's Investment in the Domestic Industry ................................................ 15

X.     RELATED LITIGATION .......................................................................................... 19

XI.    RELIEF REQUESTED .............................................................................................. 19

## I.    INTRODUCTION

1.    Fitbit, Inc. ("Fitbit" or "Complainant") requests that the United States International Trade Commission ("the Commission") institute an investigation into violations of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, by Respondents AliphCom d/b/a Jawbone ("Jawbone") and BodyMedia, Inc. ("BodyMedia") (collectively, "Respondents")

2.    Fitbit brings this Complaint in order to protect its domestic industry from the widespread, willful, and destructive unfair competition caused by the patent infringement of Respondents, which develops and distributes the infringing UP Move, UP2, UP3, and UP4, as well as the UP App.

3.    This Complaint is based on the Respondents' unlawful and unauthorized importation into the United States, sale for importation, and/or sale within the United States after importation of wearable fitness and activity tracker devices.

4.    Fitbit is a company that helps people lead healthier, more active lives by empowering them with data, inspiration, and guidance to reach their goals. Fitbit is an innovator in the health and fitness market, addressing key needs with advanced technology embedded in cutting-edge but simple-to-use products and services. Since 2007, Fitbit has led the way in health and fitness in both the U.S. and abroad, growing rapidly into a leading global health and fitness brand. Fitbit has built an extensive and acclaimed domestic industry and holds the leading position in the U.S. connected activity tracker market.

5.    Fitbit welcomes competition, as it has always worked hard to find new and better ways to build the best products for consumers. Jawbone, by contrast, has continually played catchup to Fitbit, emulating Fitbit and infringing Fitbit's patents.

6.      Respondents' products infringe, either literally or under the doctrine of equivalents, at least one or more claims of U.S. Patent No. 8,920,332 ("the '332 patent"), U.S. Patent No. 8,868,377 ("the '377 patent"), and U.S. Patent No. 9,089,760 ("the '760 patent") (collectively, the "patents-at-issue" or the "Fitbit Patents"). The patents-at-issue are valid and enforceable United States Patents.

7.      The Fitbit Patents relate to technology used in wearable fitness and activity tracker devices to monitor and report on health and wellness metrics.

8.      On information and belief, Respondents' activity tracker devices infringe at least the following exemplary claims of the patents-at-issue:

| Patent Number | Asserted Claims |
|---|---|
| 8,920,332 | 1, 4-5, 13-17 |
| 8,868,377 | 1, 2-4, 7-9, 10, 11, 16, 25, and 27-28 |
| 9,089,760 | 1, 2-12, 13, 14-15, 18-21 |

9.      A certified copy of the '332 patent accompanies this complaint as Exhibit 1. Fitbit owns by assignment the entire right, title, and interest in this patent.

10.     A certified copy of the '377 patent accompanies this complaint as Exhibit 2. Fitbit owns by assignment the entire right, title, and interest in this patent.

11.     A certified copy of the '760 patent accompanies this complaint as Exhibit 3. Fitbit owns by assignment the entire right, title, and interest in this patent.

---

[1] Claims in bold are independent claims.

12.    The Respondents' activities with respect to the importation into the United States, the sale for importation into the United States, and/or the sale within the United States after importation of certain wearable fitness and activity tracker devices, described more fully *infra*, are unlawful under 19 U.S.C. § 1337(a)(1)(B)(i) in that they constitute infringement of the valid and enforceable patents-at-issue.

13.    Accordingly, Fitbit seeks relief from the Commission in the form of a limited exclusion order excluding from entry into the United States activity tracking devices, systems, and components thereof that infringe the asserted patents. Fitbit further seeks a cease and desist order halting the importation, sale, offer for sale, marketing, advertising, or soliciting of activity tracking devices, systems, and components thereof owned, held, or stored by the Respondents and their related companies that infringe the valid and enforceable Fitbit patents.

14.    As required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States relating to the patents-at-issue exists by virtue of at least Fitbit's investment in plant and equipment, employment of labor and capital, and/or investment in the exploitation with respect to the patents-at-issue.

## II.    COMPLAINANT

15.    Fitbit is a United States company organized and existing as a corporation under the laws of Delaware. Fitbit maintains its principal place of business at 405 Howard Street, San Francisco, California 94105.

16.    Fitbit is the owner by assignment of all right, title, and interest in and to the '332 patent; '377 patent, and '760 patent. (*See* Exhibits 4-6.)

17.    Fitbit designs, develops, markets, and sells or licenses: (i) the Fitbit Surge; (ii) the Fitbit ChargeHR, (iii) the Fitbit Charge, (iv) the Fitbit Flex; (v) the Fitbit One; and (vi) the Fitbit

5

Zip. Fitbit sells or licenses its products in the United States, and worldwide, including through its online store, its corporate wellness offering, distributors, and retailers.

18.    Fitbit developed the technology that is protected by the patents-at-issue through its own extensive research and development efforts. Fitbit has made and continues to make significant investment in the research, design, and development of products protected by the patents-at-issue, including the Fitbit Surge, Fitbit ChargeHR, Fitbit Charge, Fitbit Flex, Fitbit One, and Fitbit Zip, among others, in the United States.

19.    Fitbit's registration statement, including a prospectus describing the activities of the company, is attached as Exhibit 34. Fitbit's Quarterly Report, Form 10-Q, is attached as Exhibit 35.

## III.    PROPOSED RESPONDENTS

### A.    AliphCom, Inc. d/b/a Jawbone

20.    Jawbone is a corporation organized and existing under the laws of California and has its principal place of business at 99 Rhode Island Street, 3rd Floor, San Francisco, CA 94103.

21.    Jawbone either by itself, through its subsidiaries (such as BodyMedia), or through third-parties acting on its behalf develops, manufactures or has manufactured, markets, sells, sells for importation, and imports the UP system and the UP activity trackers—including the UP Move, UP2, UP3, and UP4—which infringe Fitbit's patents. Jawbone markets its wearable fitness and activity tracker devices to consumers in the United States through major distribution

4

chains like Best Buy, Wal-Mart, and various online resellers. (*See* Exhibit 27 Accused Products Photographs); Exhibit 26 (Amazon.com Receipt for Accused Products)).

22.    Additional information regarding Jawbone is attached as Exhibit 36.

**B.    BodyMedia, Inc.**

23.    BodyMedia is a wholly owned subsidiary of Jawbone, and is organized and existing under the laws of Delaware with its principal place of business at Union Trust Building, 501 Grant Street, Suite 1075, Pittsburgh, PA 15219.

24.    AliphCom acquired BodyMedia, Inc. in April 2013 and incorporated BodyMedia's "multi-sensor approach" to physiological data collection and other BodyMedia technology into subsequent products.    Products incorporating multiple sensors, such as temperature sensors and bioimpedance sensors, include at least the UP3 and UP4.    On information and belief, BodyMedia has contributed to the design, development, manufacture, marketing, and/or sale of at least the UP Move, UP3, and UP4 devices.

25.    Additional information regarding BodyMedia and the press release regarding Jawbone's acquisition of BodyMedia is attached as Exhibit 37.

**IV.    THE PRODUCTS-AT-ISSUE**

26.    Respondents' infringing products include the following wearable fitness and activity tracking devices and activity tracking device systems: (1) Jawbone UP4, (2) Jawbone UP3, (3) Jawbone UP2, (4) Jawbone UP Move, and (5) Jawbone UP App (collectively, the "Jawbone Infringing Products"). (*See* Exhibits 29-32). Jawbone's Infringing Products are the kind of tracking devices sold in the market which can gather data on movement, activity, sleep, and other parameters. Examples of these infringing products are identified below and in Exhibits 29-32 and are described in the infringement claim charts of Exhibits 7-13. Photographs of

5

certain examples of the Jawbone Infringing Products, along with receipts showing their purchase in the United States, are attached as Exhibits 26-27.

27.     The Jawbone Infringing Products are imported into and sold within the United States by or on behalf of Respondents. On information and belief, Respondents maintain commercially significant volumes of the infringing products in inventory in the United States.

28.     The products enumerated above are merely illustrative of the types and classes of infringing products that Respondents manufacture and import into the United States, sell for importation into the United States, and/or sell within the United States after importation in violation of Section 337. Discovery may reveal additional products or product categories that infringe the asserted claims, additional claims that are infringed by the Jawbone Infringing Products, and/or additional instances of indirect infringement through inducement or contributory infringement. The identification of a specific model, trade name, or type of activity tracking device is not intended to limit the scope of this investigation.

V.      THE PATENTS-AT-ISSUE

A.      The '332 Patent

        1.      Identification and ownership of the '332 patent

29.     U.S. Patent No. 8,920,332, entitled "Wearable Heart Rate Monitor," issued on December 30, 2014, to inventors Jung Ook Hong and Shelten Gee Jao Yuen. The '332 patent remains in full force and effect, and Fitbit is the owner of all right, title, and interest in and to the '332 patent. A certified copy of the '332 patent is attached as Exhibit 1.

30.     Pursuant to Commission Rule 210.12(a)(9)(ii), a certified copy of the recorded assignment of the '332 patent to Fitbit is attached as Exhibit 4.

6

31.    Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '332 patent, as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached as Appendices A and B, respectively.

### 2.    Non-technical description of the invention of the '332 patent[2]

32.    The '332 patent has thirty claims: two independent claims and twenty-eight dependent claims.

33.    The '332 patent generally relates to a wearable fitness monitoring device that uses both motion sensing technology and heart-rate sensing technology to detect the heart rate of a user. The '332 patent describes a device that contains both a heart rate monitor and a motion sensor. The device is then operated so as to detect whether the user is moving and whether the heart rate monitor in close to or touching the user's skin. When the device detects that it is being worn, due to movement and skin proximity, the device undergoes operations to measure the heart rate of the user.

### 3.    Foreign counterparts

34.    A list of foreign counterparts to the '332 patent is found in Exhibit 25. Fitbit owns all rights, title, and interest in and to each of these foreign counterparts. To the best of Fitbit's knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '332 patent.

---

[2]  The text of this Complaint and the sections providing non-technical descriptions of the patents-at-issue are not intended to construe either the specification or the claims of the patents-at-issue.

**B.    The '377 Patent**

### 1.    Identification and ownership of the '377 patent

35.    U.S. Patent No. 8,868,377, entitled "Portable Monitoring Devices and Methods of Operating Same," issued on October 21, 2014, to inventors Shelten Gee Jao Yuen, James Park, and Eric Nathan Friedman. The '377 patent remains in full force and effect, and Fitbit is the owner of all right, title, and interest in and to the '377 patent. A certified copy of the '377 patent is attached as Exhibit 2.

36.    Pursuant to Commission Rule 210.12(a)(9)(ii), a certified copy of the recorded assignment of the '377 patent to Fitbit is attached as Exhibit 5.

37.    Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '377 patent, as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached as Appendices C and D, respectively.

### 2.    Non-technical description of the invention of the '377 patent

38.    The '377 patent has twenty-nine claims: four independent claims and twenty-five dependent claims.

39.    The '377 patent generally relates to an activity tracking device that calculates activity points based on the amount of physical activity of a user and that displays results to the user. The '377 patent describes an activity tracker that can be worn on the body of a user. The activity tracker uses sensors, which can include accelerometers, to generate data that represents the activity of a user. The activity tracker also includes a display. The activity data is used to generate activity points, which indicate an amount of physical activity of the user and can be displayed to the user.

8

### 3.   Foreign counterparts

40.    A list of foreign counterparts to the '377 patent is found in Exhibit 25. Fitbit owns all rights, title, and interest in and to each of these foreign counterparts. To the best of Fitbit's knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '377 patent.

### C.   The '760 Patent

#### 4.   Identification and ownership of the '760 patent

41.    U.S. Patent No. 9,089,760, entitled "System and Method for Activating a Device Based on a Record of Physical Activity," issued on July 28, 2015, to inventors Seth A. Tropper and Amado Batour. The '760 patent remains in full force and effect, and Fitbit is the owner of all right, title, and interest in and to the '760 patent. A certified copy of the '760 patent is attached as Exhibit 3.

42.    Pursuant to Commission Rule 210.12(a)(9)(ii), a certified copy of the recorded assignment of the '760 patent to Fitbit is attached as Exhibit 6.

43.    Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '760 patent, as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached as Appendices E and F, respectively.

#### 5.   Non-technical description of the invention of the '760 patent

44.    The '760 patent has twenty-two claims: two independent claims and eighteen dependent claims.

45.    The '760 patent generally relates to a device that is designed to encourage physical activity by monitoring and recording the physical activity of a user. The '760 patent

describes a device that has a removable component which contains motion sensors for detecting movement of a user. The patent further describes a memory in the device that can be used to store a threshold value. The threshold value can be used as a comparison against measured motion, to determine whether a certain movement of a user should be recorded. The patent describes technology to determine whether certain movement should count as physical activity. The threshold value can also be used as a "goal" for physical activity, against which a total amount of physical activity of the user can be measured. Representations of the amount of physical activity recorded can then be displayed to the user on the device and transmitted to a second device.

      **6.  Foreign counterparts**

  46.  A list of foreign counterparts to the '760 patent is found in Exhibit 25. Fitbit owns all rights, title, and interest in and to each of these foreign counterparts. To the best of Fitbit's knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '760 patent.

  **D.  Licenses**

  47.  A list of licensed entities for the patents-at-issue is found in Confidential Exhibit 40.

  48.  Complainant is not relying upon any license to establish standing or satisfy the domestic injury requirement.

**VI.  UNLAWFUL AND UNFAIR ACTS OF THE PROPOSED RESPONDENTS**

  49.  The Respondents import into the United States, sell for importation into the United States, and/or sell in the United States after importation the Jawbone Infringing Products that infringe one or more of the patents-at-issue in violation of 35 U.S.C. § 271.

50. The Jawbone Infringing Products are manufactured, assembled, downloaded, installed, and/or packaged and tested overseas, specifically, at least in China. (*See* Exhibit 27.) The same Jawbone Infringing Products are then imported into the United States, operated and tested in the United States, sold for importation into the United States, and/or sold after importation in the United States. (*See* Exhibits 29-32; Exhibit 26; Exhibit 28; and Exhibit 36.)

51. The Respondents, directly and through their authorized agents, sell and offer for sale the Jawbone Infringing Products within the United States. The Respondents sell and offer for sale the Jawbone Infringing Products to consumers, distributors, and independent retailers in the United States. The Respondents import or sell for importation into the United States the Jawbone Infringing Products.

52. As referenced in paragraphs 59-61 below, and described more fully in Exhibits 7-13 hereto, the Jawbone Infringing Products infringe upon importation into the United States. The Respondents directly infringe the patents-at-issue through the operation, development, testing, offering for sale, and/or selling the infringing articles in the United States.

53. The Respondents knowingly induce others in the United States to use products covered by the patents-at-issue and to perform methods covered by certain claims of the patents-at-issue. For example, Respondents market their products to consumers online and in other materials. The Respondents provide the Jawbone Infringing Products along with advertisements, directions, demonstrations, guides, manuals, training for use, support and technical assistance, and other materials and actions that encourage and facilitate the use by another in a manner that the Respondents know are acts of infringement of one or more of the asserted claims of each of the patents-at-issue. The Respondents commit these acts with knowledge or willful blindness

11

that such induced acts would constitute infringement.    Consumers directly infringe after being induced by Respondents to do so.

54.    With knowledge and intent to induce direct infringement of the patents-at-issue, the Respondents have and will aid and abet infringement by instructing the purchaser or user of an accused device to use that device in an infringing manner.

55.    The Respondents also contributorily infringe the patents-at-issue.    The Respondents offer to sell within the United States, sell within the United States, or import into the United States the Jawbone Infringing Products knowing that such are used to infringe one or more of the asserted claims of each of the patents-at-issue, that the Jawbone Infringing Products constitute a component and material part of the invention claimed by the patents-at-issue, that the Jawbone Infringing Products are especially made or adapted for such infringing use, and that the Jawbone Infringing Products are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

56.    The Respondents have had actual notice of their infringement of the patents-at-issue prior to the filing of this Complaint, and in no event later than the service of this Complaint.

57.    Attached as Exhibit 29-32 are the Jawbone online support pages for the Jawbone Infringing Products.    Jawbone publishes these help articles and answers to frequently asked questions on its website at https://help.jawbone.com.    Jawbone also publishes the "UP API"—which is a set of protocols that can be used to read and write data for a user's tracker collections, profile data, social resources, fetch status of devices, and statistical data—and developer resources on its website at https://jawbone.com/up/developer/.    These materials induce infringement of the patents-at-issue.

12

E.    Patent Claims at Issue

58.    The aforesaid acts of Respondents constitute direct infringement, contribute to the infringement, or induce the infringement under 35 U.S.C. § 271 of at least claims 1, 4-5, and 13-017 of the '332 patent (of which claim 1 is independent); claims 1, 2-4, 7-9, 10-11, 16, 25, and 27-28 of the '377 patent (of which claims 1, 10, and 25 are independent), and claims 1, 2-12, 13, 14-15, and 18-21 of the '760 patent (of which claims 1 and 13 are independent).

59.    Exemplary claim charts demonstrating infringement of claim 1 of the '332 patent by the Jawbone Infringing Products are attached as Exhibits 7-8.

60.    Exemplary claim charts demonstrating infringement of claims 1, 10, and 25 of the '377 patent by the Accused Products are attached as Exhibits 9-12.

61.    Exemplary claim charts demonstrating infringement of claims 1 and 13 of the '760 patent by the Accused Products are attached as Exhibit 13.

VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

62.    The Respondents import into the United States, sell or offer for sale for importation into the United States, and/or sell or offer for sale after importation into the United States the Jawbone Infringing Products.

63.    The Jawbone Infringing Products are manufactured, assembled, downloaded, installed, and/or packaged and tested in numerous countries around the world, including China. (See Exhibit 27; Physical Exhibits 5-10.) The Jawbone Infringing Products are then imported into the United States, operated and tested in the United States, sold for importation into the United States, and/or sold after importation into the United States by the Respondents. (See id.; Exhibit 28).

13

64.    Attached as Exhibit 27 and Exhibit 26 are photographs and receipts for purchase of the following Jawbone Infringing Products bearing "Made in China," "Assembled in China," or similar designations:  (1) the Jawbone UP Move says "Made in China" on the product and "Assembled in China" on its packaging; (2) the Jawbone UP2 says "Made in China" on the product and "Assembled in China" on its packaging; (3) the Jawbone UP3 says "Made in China" on the product and "Assembled in China" on its packaging; and (4) the Jawbone UP4 says "Made in China" on the product.  The aforesaid Jawbone Infringing Products bearing "Made in China," "Assembled in China," or similar designations have been imported into and can be purchased in the United States.  (See Exhibit 27; Exhibit 26; Physical Exhibits 5-10.)

## VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

65.    The Accused Products are believed to fall within at least the following classification of the Harmonized Tariff Schedule of the United States:  Heading No. 9031.80.8085.  The Harmonized Tariff Schedule number is for illustrative purposes only, and is not intended to limit the scope of the Investigation or to limit the scope of any exclusion order or other remedy ordered by the Commission.

## IX.   DOMESTIC INDUSTRY

66.    There is a domestic industry, as defined under 19 U.S.C. § 1337(a)(3)(A), (B), and (C), comprising continuing significant investments in physical operations, employment of labor and capital, and substantial investment in exploitation of the patents-at-issue.

### A.    Fitbit's Articles Protected by the Patents-at-Issue

67.    Fitbit has developed and is developing innovative products that have revolutionized the wearable fitness device industry.  Indeed, Fitbit is widely regarded as a global leader in wearable technology.  Fitbit invests heavily in developing the technology underlying its

products. To protect its substantial investment in developing this technology, Fitbit has sought and obtained extensive patent protection for this technology, including the patents-at-issue. As demonstrated by the exemplary charts of Exhibits 14–24, Fitbit practices the invention of at least one claim of each of the patents-at-issue in its Surge, Charge HR, Charge, Flex, One, and Zip devices (the "Domestic Industry Products").

B.      Fitbit's Investment in the Domestic Industry

68.     Fitbit has researched, designed, engineered, and developed in the United States a diverse product line of wearable fitness and activity trackers. The Domestic Industry Products consist of all six wearable fitness and activity trackers in the current product line. (*See* Exhibit 34, at 6; *see also* Confidential Exhibit 39, at 2.) In addition, Fitbit sells such Domestic Industry Products and provides customer support and service within the United States. (*See* Confidential Exhibit 39.) Fitbit also has developed and continues to develop a broad array of software and firmware, including mobile applications and online resources, which complement the functionality of its wearable fitness and activity trackers and help Fitbit users achieve their health and fitness goals.

(*See* Confidential Exhibit 39, at 3-4.)

69.     Fitbit has made and continues to make significant and substantial investments in plant and equipment in the United States with respect to the Domestic Industry Products that practice the patents-at-issue.

. (*See* Confidential Exhibit 38, at 14.)

15

70.    Fitbit further engages in exploitation of the patents-at-issue through its substantial domestic investments in engineering and research and development activities directed to the Domestic Industry Products that practice the patents-at-issue. These activities include, *inter alia,*

in the Domestic Industry Products. Overall, Fitbit has spent more than

,[3] of which a substantial amount is allocable to the Domestic Industry Products. (*See* Exhibit 34, at 12; Exhibit 35, at 4.) Confidential Exhibit 38 contains detailed information regarding Fitbit's research and development expenditures within the United States. (*See* Confidential Exhibit 38 at 1-2, 13-14.) Fitbit's investment in research and development related to its product line of wearable fitness and activity trackers is ongoing.

71.    Fitbit has made and continues to make significant and substantial investments in labor in the United States with respect to the Domestic Industry Products. As noted above,

. Those domestic investments in labor are dedicated to

(*See* Confidential Exhibit 38 at 2-14.).

72.    Fitbit has also invested substantial amounts on

. (*See* Exhibit 38, at 12.)

73.    In addition, Fitbit has made a substantial investment in mobile and online resources that support its customers' use of the Domestic Industry Products. For example, Fitbit

---

[3] Fitbit's fiscal year is the period that begins on the first day of January and ends on the last day of December of the same calendar year. Information for fiscal year 2015 is for the six months ended June 30, 2015 only.

offers a personalized online dashboard and a mobile application that connect with and display data from Fitbit's connected health and fitness devices. Fitbit also offers a premium service that acts as a 24/7 virtual personal trainer delivered to users through any web browser. Investments into resources include the acquisition of FitStar in March of 2015 for total consideration of _____ The FitStar acquisition allows Fitbit to provide interactive video-based exercise experiences on mobile devices and computers that use proprietary algorithms to adjust and customize workouts for individual users based on data gathered during their workouts. (Exhibit 34, at 56). (*See also* Confidential Exhibit 39, at 3-4.)

_____ (*See* Confidential Exhibit 39, at 2-4.) Confidential Exhibit 39 contains further details regarding Fitbit's mobile application and online resources. (*See id.*) Fitbit's investment into its mobile application and online resources is ongoing.

74.

75.    Fitbit's investments and activities are significant and substantial

76.    Fitbit's investments and activities are important to the protected articles and represent significant domestic added value.

17

77.

78.     The United States represents Fitbit's largest geographic marketplace. Approximately 75 percent of Fitbit's revenue in 2014 came from sales to customers within the United States, based on ship-to destinations, and approximately 78 percent of Fitbit's revenue in the first six months of 2015 came from sales to customers within the United States. (*See* Exhibit 34, at 57, F-43; Exhibit 35, at 23.) In 2014, Fitbit's total revenue surpassed $745 million. (*See* Exhibit 34, at 12.) During 2014, Fitbit sold nearly 11 million devices. (*See* Exhibit 34, at 56-57.)

79.     Fitbit supports a large and growing community of users. The total number of registered users on the Fitbit platform as of March 31, 2015 was 19 million. (*See* Exhibit 34, at 5.) Fitbit has over 9 million active users. An active user is a registered Fitbit user who, within the three months prior to the date of measurement, has (1) an active subscription to Fitbit services, (2) paired a health and fitness tracker or other device with his or her Fitbit account, or (3) logged at least 100 steps with a health and fitness tracker or another physiological measurement with another connected device. (*See Id.* at 58)

80.     Fitbit's domestic industry investments and expenditures with respect to the patents-at-issue are continuous and ongoing. (*See* Confidential Exhibits 38-39.)

81.     The activities described above are explained in detail in the Declaration of Eric Friedman, attached as Exhibit 39 (Confidential). The investments described above are set forth in the Declaration of William Zerella, attached as Exhibit 38 (Confidential).

18

## X.    RELATED LITIGATION

82.    There are no litigation or administrative proceedings related to the subject matter of this complaint.

## XI.    RELIEF REQUESTED

83.    WHEREFORE, by reason of the foregoing, Fitbit respectfully requests that the United States International Trade Commission:

a.    institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, into the unlawful importation into the United States, the sale for importation into the United States, and/or the sale within the United States after importation by the Respondents of certain activity tracking devices, including the Jawbone Infringing Products, as well as components thereof, including associated software, that infringe one or more claims of the United States patents-at-issue;

b.    schedule and conduct a hearing on permanent relief pursuant to 19 U.S.C. § 1337(c) for the purposes of receiving evidence and hearing argument concerning whether there has been a violation of Section 337, and following the hearing, determine that there has been a violation of Section 337;

c.    issue a limited exclusion order pursuant to 19 U.S.C. § 1337(d) excluding from entry into the United States all of Respondents' activity tracking devices, systems, and components thereof that infringe one or more claims of United States Patent Nos. 8,920,332; 8,868,377; and 9,089,760.

d.    issue a cease-and-desist order pursuant to 19 U.S.C. § 1337(f), prohibiting the Respondents and their affiliates, subsidiaries, successors, or assigns from

19

importing, selling, servicing, marketing, advertising, demonstrating, distributing, offering for sale, transferring, including moving or shipping inventory, in the United States, and soliciting U.S. agents or distributors for any of Respondents' activity tracking devices, systems, and components thereof that infringe one or more claims of United States Patent Nos. 8,920,332; 8,868,377; and 9,089,760.

e.    issue such other and further relief as the Commission deems appropriate.

Dated: October 28, 2015

Respectfully submitted,

Josh Krevitt
Beatrice Hahn
George Stamatopoulos
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Wayne Barsky
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Tel: (310) 552-8500
Fax: (310) 551-8741

Jason Lo
Jennifer Rho
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave
Los Angeles, CA 90071-3197
Tel: (213) 229-7153
Fax: (213) 229-6153

Neema Jalali
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8258
Fax: (415) 374-8409

Frederick S. Chung
Stuart M. Rosenberg
Alison Watkins
Quincy Lu
Christina Chandler Kogan
Zachary Wood
Ryan Iwahashi
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road

21

Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

Andrew Lin
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel: (214) 698-3100
Fax: (214) 571-2900

*Counsel for Complainant Fitbit, Inc.*

## VERIFICATION OF COMPLAINT

I, Eric N. Friedman, am the Chief Technology Officer at Fitbit, Inc. ("Fitbit"). I am duly authorized to execute the foregoing Complaint under Section 337 of the Tariff Act of 1930, as amended (the "Complaint") on behalf of Fitbit. I have read the Complaint and am aware of its contents. In accordance with 19 C.F.R. §§ 210.4 and 210.12(a), I declare that the following statements are true:

1.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the allegations and other factual contentions of this Complaint are well grounded in fact and have evidentiary support, or, where identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

2.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the claims and other legal contentions set forth in the Complaint are warranted by existing law or by a nonfrivolous, good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; and

3.      The Complaint is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of the investigation or related proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 28, 2015

Eric N. Friedman
Chief Technology Officer

23